CENTRAL TELEVISION, INC. and WTWV, Inc., Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Beam Broadcasters, Ltd., Intervenor.

No. 86–1471.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 14, 1987.

Decided Dec. 4, 1987.

---

William J. Byrnes, for appellants. Henry A. Solomon and James E. Dunstan were on the brief, for appellants. Michael H. Bader, Washington, D.C., also entered an appearance, for appellants.

Gregory M. Christopher, Counsel, F.C.C., with whom Diane S. Killory, General Counsel and Daniel M. Armstrong, Associate General Counsel, F.C.C. were on the brief for appellee. C. Grey Pash, Jr., Counsel, F.C.C., Washington, D.C., also entered an appearance for appellee.

Peter A. Rohrbach, Washington, D.C., entered an appearance, for intervenor.

Before WALD, Chief Judge, MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

On September 12, 1984, Central Television, Inc. (Central)[1] reached a settlement agreement with Broadcasters of Mississippi, Inc. (Broadcasters). Central agreed to dismiss its appeal of a Federal Communications Commission (FCC) decision granting Broadcasters a television channel in Laurel, Mississippi. In turn, Broadcasters was to

---

1. Co-appellants Central and WTWV, Inc., both controlled by Frank Spain, Joint Appendix (J.A.) at 77, will be referred to collectively as "Central."

pay Central $25,000 in direct payment, and $475,000 in fees for four years of consulting service. This second sum was contingent upon Central's further obligation to sell Broadcasters a radio channel construction permit (Channel 22 in Hattiesburg, Mississippi). The transfer received the FCC's approval subject to the condition that Central not receive payment exceeding the actual amount expended on the construction permit or operational costs to date,[2] in this case $100,000.[3] Because of that condition and the FCC's view of the consultancy arrangement as compensation to Central for the transfer, Central claims that it cannot collect a considerable portion of its anticipated consultancy fees.[4] Central challenges the FCC's maximum payment condition that causes the loss.

We need not reach the core dispute over whether the consultancy fee of $475,000 was reimbursement for Central's settlement agreement or was impermissible profit to Central from its assignment transaction, because we hold, as a threshold matter, that the case must be dismissed for lack of jurisdiction. Appellants failed to follow the express FCC procedure for challenging a conditional grant, hence they are not properly before this court on appeal.

## I. BACKGROUND

The FCC granted Central the construction permit for Channel 22 in Hattiesburg, Mississippi in December 1980. Central then petitioned the FCC to deny Broadcasters' (previously, Capitol Broadcasting Co.) pending application for Channel 18 in neighboring Laurel. Central contested whether the Laurel–Hattiesburg market needed Channel 18 as a television rebroad-

casting station.[5] The FCC denied Central's claim and approved Broadcasters' application. *Capitol Broadcasting Co.*, 54 Rad. Reg.2d (P & F) 811 (1983). Fearful that Channel 18 would receive major network affiliation, thereby reducing the value of Channel 22, Central appealed the FCC action. Just prior to oral argument in this court, Central and Broadcasters agreed to dismiss the appeal. The settlement terms were these: Central received $25,000 from Broadcasters in direct payment; Central also would receive, in installments, $475,000 for a four-year consultancy arrangement, to begin upon transfer of Central's construction permit; finally, Central agreed to transfer the Channel 22 construction permit to Broadcasters—Broadcasters would reimburse Central for the costs incurred in pursuit of authorization and construction (a sum not to exceed $100,000). The Commission's General Counsel, who had received a copy of the settlement contract, assured the parties that, though the FCC would not pass on the merits of the agreement, it would register no objection to the dismissal settlement. On September 14, 1984, this court dismissed the appeal. A month later, Central and Broadcasters applied to the FCC for approval of the assignment of Central's construction permit for Channel 22 to Broadcasters.

Beam Broadcasters Ltd. (Beam), a television licensee of WDAM–TV Laurel, Mississippi, petitioned to deny the assignment application, arguing that the settlement's $475,000 consultancy arrangement was actually "additional consideration" for the Channel 22 construction permit and thus violated the FCC's antitrafficking rule. That rule limits the payment for sale of a construction permit for an unbuilt station

---

**2.** The FCC rule prohibits receipt of expenses that exceed "the aggregate amount clearly shown to have been legitimately and prudently expended and to be expended ... solely for preparing, filing, and advocating the grant of the construction permit for the station, and for other steps reasonably necessary toward placing the station in operation." 47 C.F.R. § 73.3597(c)(2) (1986) [hereinafter Rule 73].

**3.** This case does not plunge us into problems of valuing assets because Central accepts the FCC's valuation of $100,000 for the Hattiesburg construction permit. *See* Brief of Appellee at 12.

**4.** We make no inquiry into possible state law relief to which Central may be entitled.

**5.** Channel 18 would rebroadcast from a CBS network affiliate in Jackson, Mississippi.

to "the aggregate amount clearly shown to have been legitimately and prudently expended and to be expended by the seller, solely for preparing, filing, and advocating the grant of the construction permit for the station, and for other steps reasonably necessary toward placing the station in operation." Rule 73, *supra.* Beam emphasized that the consultancy agreement contains virtually no specific duties on Central's part, that Central and Broadcasters are in fact competitors, and that, as consultant, Central would receive as much as $4,400 per day for ill-defined work. Central and Broadcasters filed a joint opposition to Beam's petition. They argued that the large consultancy fees were in large part compensation for the dismissal of the appeal and were unrelated to the permit assignment. An FCC staff determination held in favor of Beam, and urged Central and Broadcasters to amend their agreement to separate altogether the consultancy payment from the assignment. *See* Letter to Henry A. Solomon from Roy J. Stewart, August 23, 1985, J.A. at 127. Central challenged this ruling.

On July 25, 1986, the Commission released its decision, now on appeal. *Central Television, Inc.,* 60 Rad.Reg.2d (P & F) 1297 (1986), J.A. at 137. It affirmed the staff conclusion that the consultancy payments were not related in time to the dismissal of the appeal but instead took effect only upon the transfer of the construction permit. Finding that this contingency made the payments "an unavoidable part of that transaction," the Commission held that the consultancy agreement violated Rule 73. *Id.* at 1299–1300. Consequently, it approved the assignment subject to the condition that no payments would exceed

the $100,000 specified in the assignment contract.

Appellants completed the assignment transfer on September 10, 1986. *See* Letter of David Tillotson to FCC, Sept. 11, 1986, J.A. at 141. They also appealed from the FCC condition disallowing the consultancy payments.

## II. ANALYSIS

■ The FCC asserts that judicial review is unavailable in this case. This court's jurisdiction over the FCC's actions is controlled by § 402(b) of the Federal Communications Act of 1934, as amended,[6] and § 10 of the Administrative Procedure Act.[7] Under § 402(b), subsection (3), appeal may be taken only when the FCC has "denied" an application to assign a construction permit. Clearly, the FCC did not deny the transfer request, now consummated, between Central and Broadcasters. Rather, the FCC imposed the condition that no payment for the transfer exceed $100,000.[8] In the FCC's words:

> we cannot approve this requested transfer with the subject consultancy agreement, as it would violate § 73.3597 of the Commission's Rules. However, we will permit the parties to complete their transaction, subject to the condition that no payments are made in excess of the $100,000.00 called for in the assignment contract.

60 Rad.Reg.2d (P & F) 1297, 1300 (1986), J.A. at 140. Because we understand the FCC's action to be a conditional grant, proper under C.F.R. § 1.110 (1986) (§ 1.110), we must consider whether § 1.110 bars Central from challenging the validity of the maximum payment condition after it has consummated the permit trans-

---

6. 47 U.S.C.A. § 402(b) (West 1962 & Supp.1986) reads:

   Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

   .   .   .   .   .

   (3) By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights

thereunder, whose application is denied by the Commission.
   *Id.*

7. 5 U.S.C.A. § 704 (West 1977 & Supp.1987).

8. Since neither party contests this valuation of the permit's worth, what is at issue is the FCC's finding that any fees to Central under the consultancy arrangement would be considered payment for the permit assignment, hence subject to the $100,000 cap.

fer.[9] The plain language of § 1.110 implies an exhaustion requirement:

> Where the Commission without a hearing grants any application in part, or with any privileges, terms, or conditions other than those requested, or subject to any interference that may result to a station if designated application or applications are subsequently granted, the action of the Commission shall be considered as a grant of such application unless the applicant shall, within 30 days from the date on which such grant is made or from its effective date if a later date is specified, file with the Commission a written request rejecting the grant as made. Upon receipt of such request, the Commission will vacate its original action upon the application and set the application for hearing in the same manner as other applications are set for hearing.

47 C.F.R. § 1.1110.[10] Central failed to challenge the conditions of its partial grant according to this prescribed procedure. *Cf. Minnesota Broadcasting Corp.*, 13 F.C.C. 672, 675 (1949) (permittee not entitled to hearing without timely rejection of partial grant); *Frequency Broadcasting Corp.*, 9 F.C.C. 15, 16 (1941) (application set for hearing when petitioner makes timely rejection of conditional grant). The FCC's order conditionally approving the transfer was released on July 25, 1986. Thirty days later the grant became final. Then, on September 10, 1986, Central assigned the permit to Broadcasters and received compensation of $100,000. Having secured this benefit, authorized by an FCC ruling that clearly conditioned the transfer on Central's accepting no additional compensation, Central now asserts its right to additional compensation. We find this position untenable.

This court has considered similar § 1.110 appeals twice previously, and on both occasions has upheld the FCC's authority to require applicants either to accept a conditional grant or to reject it and make a timely request for a full hearing. Section 1.110, both decisions agree, does not allow applicants first to accept a partial grant, yet later to seek reconsideration of its conditions. *See Capital Telephone Co. v. FCC*, 498 F.2d 734, 739, 740 (D.C.Cir. 1974); *Beaumont Broadcasting Corp. v. FCC*, 202 F.2d 306, 308, 309 (D.C.Cir.1952); *see also Western Union Telegraph Co. v. FCC*, 541 F.2d 346, 355 & n. 16 (3d Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977); *American Bond & Mortgage Co. v. United States*, 52 F.2d 318, 321, 322 (7th Cir.1931) (on rehearing). Acceptance of a grant, with any attendant conditions, is presumed if no rejection occurs within thirty days of the grant's issuance. *See, e.g., In re Application of Willard Shoecraft (KINO)*, 3 F.C.C.2d 775, 776 (1966). Central chose this latter route, and indeed, soon thereafter, acted upon the grant by transferring it to Broadcasters. These events, whereby Central impliedly accepted its partial grant, foreclosed Central's opportunity to contest the maximum payment condition, either by rejecting the entire grant, or by petitioning the Commission for reconsideration. Under either action, were Central now before the FCC, the Commission would deny Central's challenge as untimely. *See In re Transfer of Control of WSLS–AM–FM–TV*, 29 F.C.C.2d 399, 400 (1971) (grantee challenge to undesirable condition previously accepted under § 1.110 is disallowed). Were we to intervene, we would not only frustrate the Commission's valid interest in the finality

---

**9.** In light of our ruling that § 1.110 applies, we have no reason to consider appellee's second threshold claim, unrelated to § 1.110, that a party generally cannot seek appellate review of a judgment under which she has accepted a benefit. *See* Brief of Appellee at 11 (impermissible as a "general proposition" to allow appeal of condition on grant when benefit is retained).

**10.** The FCC has promulgated similar provisions to govern more specific areas within its authority; these too include timeliness clauses. *See* 47

C.F.R. § 5.58 (1986) (partial grant authority—experimental radio services); 47 C.F.R. § 87.47 (1986) (same—aviation licenses); 47 C.F.R. § 94.41 (1986) (same—microwave authorizations). These rules limiting time periods for FCC reconsiderations exist for administrative efficiency as well as the public interest in the finality of FCC rulings; absent "unusual circumstances," exceptions are not allowed. *See* RCA Global Communications, Inc., 68 F.C.C.2d 1197, 1201 (1978).

of its decisions, but we would also ignore the longstanding principle that, prior to seeking judicial relief, disputants must pursue all reasonable avenues of relief required by the agency.[11] Although the FCC's staff personnel did communicate to Central concern that the consultancy arrangement appeared to violate Rule 73, and although the Commission's July 25 decision came to the same conclusion, the FCC has never held a hearing on the matter. We would usurp the Commission's role were we to deny it the opportunity under a § 1.110 hearing to reconsider its position.

Central in effect asks this court to vindicate the very right to an unconditional transfer that Central surrendered in order to secure its assignment permit. Because we conclude (1) that such relief would contradict the essential purpose of § 1.110; (2) that § 1.110's administrative hearing process provides "full protection of the public and private interests involved," *Beaumont Broadcasting Corp. v. FCC*, 202 F.2d 306, 309 (D.C.Cir.1952); and (3) that this court on previous occasions has applied § 1.110 as a valid exhaustion of administrative remedies rule, we hold that appellants are not entitled to judicial review of the adverse FCC ruling.

Appellants' appeal must be dismissed.

**11.** *See United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Portland Cement Assoc. v. Ruckelshaus,* 486 F.2d 375, 394 (D.C.Cir.1973), *cert. denied,* 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); *see also* 47 U.S.C.A. § 405 (West 1962 & Supp.1986) (parties must petition FCC for reconsideration prior to appealing new issue to courts). Courts generally override such provisions only where the attack on an agency ruling is constitutional, *see Bartlett v. Bowen,* 816 F.2d 695, 706–07 (D.C.Cir.1987), where it concerns a fundamental abuse of administrative process, *see Washington Assoc. for Television and Children v. FCC,* 712 F.2d 677, 682 (D.C.Cir.1983), or where the challenger can show that reconsideration would be futile, *see Action for Children's Television v. FCC,* 564 F.2d 458, 469 (D.C.Cir. 1977). Appellants make neither the first, nor the second, assertion; and their brief allegation of futility, *see* Reply Brief of Appellants at 6–7 n. 6, neglects to mention that Central's most persuasive charge, that the FCC's application of Rule 73 to the present facts is inconsistent with its treatment of consultancy arrangements in other permit transfer cases, has never been raised before the Commission.