PENINSULA COMMUNICATIONS, INC., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Phoenix Broadcasting, Inc., et al., Intervenors.

No. 01–1273.

United States Court of Appeals, District of Columbia Circuit.

Filed Jan. 30, 2003.

Before HENDERSON, RANDOLPH, and GARLAND, Circuit Judges.

### JUDGMENT

PER CURIAM.

This appeal was considered on the record from the Federal Communications Commission and on the briefs and arguments of counsel. It is

ORDERED AND ADJUDGED that the order of the Commission be affirmed for the reasons stated in the accompanying memorandum.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. See FED. R.APP. P. 41(b); D.C. CIR. R. 41.

### MEMORANDUM

Peninsula Communications, Inc., appeals from a Federal Communications Commission order rescinding conditional grants of license renewals for seven FM translator stations in Alaska.

A translator is a station that receives the signal of an FM radio broadcast station or another translator and retransmits the signal at another frequency or amplitude. See 47 C.F.R. § 74.1201(a). The Commission has placed various restrictions on translator operation, including a prohibition on ownership of both a commercial FM broadcast station and a translator that extends the broadcast station's service area. See id. § 74.1232(d).

In 1997, Commission staff granted license renewal applications that Peninsula had filed for nine translators (two of which are not at issue here), but conditioned the grant on divestiture because all nine were violating the co-ownership restriction of § 74.1232(d). Peninsula did not contest the conditional grant; in fact, it opposed an application for review of the staff decision by the Commission, filed by its competitors.

In 1998, the Commission denied the competitors' application for review and upheld the conditional renewals subject to divestiture. Applications of Peninsula Communications, Inc., 13 F.C.C.R. 23,992, 23,997, 23,999, 1998 WL 850222 (1998) ("1998 order"). Peninsula, reversing its earlier position, petitioned for reconsideration, on the ground that it was entitled to waiver of the co-ownership rule. The Commission dismissed the petition in 2000, and ordered Peninsula to divest itself of the licenses within 30 days. Applications of Peninsula Communications, Inc., 15 F.C.C.R. 3293, 3296, 2000 WL 149339 (2000) ("2000 order").

Peninsula then filed a rejection of the conditional renewals under 47 C.F.R. § 1.110. In 2001, the Commission dismissed Peninsula's rejection as untimely because § 1.110 imposes a limit of "30

days from the date on which [the conditional] grant [was] made" for filing rejections. *Peninsula Communications, Inc.,* 16 F.C.C.R. 11,364, 11,368–70, 2001 WL 526732 (2001) ("2001 order"). Because Peninsula had not fulfilled the divestiture condition originally imposed in 1997, the Commission rescinded the conditional license renewals for seven of the translators (it treated the two others differently for reasons not relevant here) and ordered Peninsula to cease operating the seven stations. *Id.* at 11,369–71.

Peninsula now argues that the rejection it filed after the 2000 order was timely because the 2000 order attached new terms and conditions to the earlier conditional grants. This is not accurate. The 30–day divestiture requirement in the 2000 order did not impose a new condition. It enforced the 1997 divestiture condition and thus did not initiate a new 30–day period for purposes of § 1.110.

Since Peninsula makes no argument that the period began at any other time, we will assume for purposes of this appeal that the Commission is correct–that the 30–day period should be measured from the staff's 1997 letter. That means Peninsula's rejection was untimely by more than two years. Peninsula foreclosed the possibility of challenging the conditional grant when it accepted the condition and sought–unsuccessfully–to comply with it by divesting itself of the licenses. *See Cent. Television, Inc. v. FCC,* 834 F.2d 186, 190–91 (D.C.Cir. 1987). Given this conclusion it is unnecessary to reach several of Peninsula's substantive arguments.

One of Peninsula's remaining challenges is that the 2001 order revoked the licenses without a hearing as required in 47 U.S.C. § 312(c). But the Commission did not revoke any of the licenses. It conditionally granted the renewals and then rescinded

the conditional grants for failure to satisfy the condition.

It is true, as Peninsula argues, that the Commission normally allows licensees whose renewal applications have been denied to continue operating pending the exhaustion of any appeal. But the Commission does this only as a "matter of discretion, not as a requirement under the Communications Act or the Administrative Procedure Act." *In re Pinelands, Inc.,* 7 F.C.C.R. 6058, 6061 n. 12, 1992 WL 690509 (1992). In the 2000 order the Commission warned Peninsula that more than a year had passed since the release of the 1998 order requiring divestiture and that its operating authority would be terminated if it did not comply with the condition. 15 F.C.C.R. at 3294. Given Peninsula's ongoing violation of the co-ownership restriction despite this warning, the Commission was well within its authority when it prohibited Peninsula from operating during its appeal.

Finally, Peninsula argues that the 1998 order was arbitrary and capricious in denying waivers of a different regulation, 47 C.F.R. § 74.1231(b) (restricting translator signal delivery methods), for the two translators in Kodiak. Because we affirm the 2001 order's recision of the Kodiak licenses on the independent ground that Peninsula failed to satisfy the divestiture condition, this argument is moot.

In summary, since Peninsula's rejection of the conditional renewals was untimely and since Peninsula showed no sign of progress toward divestiture, the Commission was justified in rescinding the renewals for failure to satisfy the attached condition.