MARINE MAMMAL CONSERVANCY,
INC., Petitioner,

v.

DEPARTMENT OF AGRICULTURE
and United States of America,
Respondents.

No. 96–1495.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 18, 1997.

Decided Feb. 3, 1998.

Arthur G. House, Bethesda, MD, argued the cause and filed the briefs for petitioner. Fredric D. Firestone, Bethesda, MD, entered an appearance.

M. Bradley Flynn, Attorney, U.S. Department of Agriculture, Washington, DC, argued the cause for respondents. With him on the brief was James M. Kelly, Associate General Counsel.

Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Marine Mammal Conservancy, Inc. is a nonprofit organization operating in the Florida Keys. For several years it has been trying to establish its ownership of four dolphins—"Molly," "Luther," "Buck," and "Jake." In 1995, the board of directors of Sugarloaf Dolphin Sanctuary, Inc., which then owned and held the dolphins at Sugarloaf Key, agreed to transfer their ownership and possession to Marine Mammal. When Sugarloaf failed to perform, a dispute ensued. Before it was resolved, the Department of Agriculture's Animal and Plant Health Inspection Service instituted a disciplinary proceeding against Sugarloaf—a proceeding to which Marine Mammal was not a party—for alleged violations of the Animal Welfare Act, 7 U.S.C. §§ 2131 *et seq.* As part of a consent decree in August 1996 terminating the proceeding, Sugarloaf relinquished to the Service "any and all ownership interest" it had in the dolphins. *In re Sugarloaf Dolphin Sanctuary, Inc.*, AWA Docket No. 96–55 (Aug. 27, 1996). Thereafter, the Service transferred possession of the dolphins, as well as "any and all rights" it had in them, to two other organizations.

Upon learning of the administrative proceeding, Marine Mammal moved to intervene and petitioned for review of the consent decree "insofar as it affected the ownership and disposition" of the dolphins. An administrative law judge denied both requests. *See In re Sugarloaf Dolphin Sanctuary, Inc.*, AWA Docket No. 96–55 (Nov. 25, 1996). Rather than appeal to the Department's judicial officer, Marine Mammal brought this petition for judicial review, contending that the Department unconstitutionally deprived it of property without due process of law. The Department's first line of defense is that we have no jurisdiction in light of Marine Mammal's failure to exhaust its administrative remedies.

■ The provision on which Marine Mammal rests its petition—7 U.S.C. § 2149(c)—allows judicial review pursuant to the Administrative Orders Review Act (28 U.S.C. §§ 2341, 2343–2350). Only those aggrieved by a "final order of the Secretary" may seek judicial review, and they must do so within sixty days of the Secretary's order. The Department's rules provide that an ALJ's decision does not become final while an appeal of the decision is pending in the agency, and that the only final orders of the Secretary "for purposes of judicial review" are

those "of the Judicial Officer upon appeal." 7 C.F.R. § 1.142(c)(4) (1997); *see also Ferguson v. United States Dep't of Agric.*, 911 F.2d 1273, 1275 n. 1 (8th Cir.1990). Marine Mammal never appealed to the judicial officer and thus never secured what the regulations define as a "final" decision. On the other hand, there is no doubt that the ALJ's decision denying Marine Mammal leave to intervene is now "final"; it became such under § 1.142(c)(4) of the regulations because Marine Mammal did not file an administrative appeal.

Before the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), most federal courts followed the general rule that a party must exhaust available administrative remedies before challenging an administrative action in court. The rule was, for the most part, judicially-created. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938). After passage of the Administrative Procedure Act in 1946, continued insistence on exhaustion potentially imposed a condition on judicial review not found in § 10(c) of the APA, 5 U.S.C. § 704. The APA granted persons "suffering legal wrong because of agency action" a right to judicial review (5 U.S.C. § 702). Section 10(c) described when they could exercise this right: when the agency action is "final." For the purpose of judicial review, § 10(c) treats an "otherwise final" action as final unless the agency requires an appeal "to superior agency authority" and renders the action "inoperative" while the appeal is pending. *Darby* held that in cases in which the APA applies, requiring a party to exhaust administrative remedies is not a matter of judicial discretion. Rather, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." 509 U.S. at 154, 113 S.Ct. at 2548.

The agency regulation before us—7 C.F.R. § 1.142(c)(4)—satisfies § 10(c) of the APA, as *Darby* interpreted it. The regulation suspends the finality of ALJ decisions pending appeal to the judicial officer. The regulation also requires exhaustion of administrative remedies. It deems "final" for the purposes of judicial review only decisions of the judicial officer on appeal. Since the statute (7 U.S.C. § 2149(c)) permits judicial review only of "final" decisions of the Secretary, the regulation is the equivalent of an agency rule stating, as a condition to judicial review, that an aggrieved party must first appeal to the judicial officer. *See Atlantic Tele–Network, Inc. v. FCC*, 59 F.3d 1384, 1388 (D.C.Cir. 1995).

Marine Mammal's failure to prosecute an administrative appeal would thus appear to doom its petition. Nevertheless, it insists the case is properly before us because it falls within three "well established and recognized exceptions" to the exhaustion doctrine: (1) the ALJ's ruling constituted a "fundamental abuse of the administrative process"; (2) exhaustion would have been futile; (3) the petition for review challenges the ALJ's ruling on constitutional grounds.

One may wonder whether judicially-recognized exceptions to a judicially-created exhaustion requirement are still pertinent after *Darby*. If courts are forbidden from requiring exhaustion when § 10(c) of the APA does not, why should courts be free to excuse exhaustion when the next to last clause of § 10(c) demands it? If an agency rule requires, without exception, that a party must take an administrative appeal before petitioning for judicial review, on what basis may a court excuse non-compliance? *See, e.g., Ayuda, Inc. v. Thornburgh*, 948 F.2d 742, 759 (D.C.Cir.1991). *But cf. Bowen v. Massachusetts*, 487 U.S. 879, 901–02, 108 S.Ct. 2722, 2735–36, 101 L.Ed.2d 749 (1988). Neither party discusses these questions and our disposition of the case does not compel us to decide them. The three supposed exceptions to the exhaustion doctrine Marine Mammal relies upon do not relieve it of the consequences of its failure to appeal to the judicial officer.

We will begin with what Marine Mammal describes as the exception for a "fundamental abuse of the administrative process." The quoted language appears, without elaboration, in a footnote in *Central*

*Television, Inc. v. FCC*, 834 F.2d 186, 191 n. 11 (D.C.Cir.1987), which in turn cited *Washington Association for Television & Children v. FCC*, 712 F.2d 677, 682 (D.C.Cir.1983). *Washington Association* did not address, as we do here, the consequences of a petitioner's failure to comply with agency rules requiring an appeal before it seeks judicial review. The issue in *Washington Association* was whether a litigant's failure to raise an objection *in its administrative appeal* precluded it from raising the objection on judicial review. That is a very different matter. The requirement that objections must first be presented to the agency, although sometimes treated as part of the judicially-created exhaustion doctrine, is largely derived from statute. Many of the statutes are cited in the *Washington Association* opinion. 712 F.2d at 682 n. 6. Some of these statutes contain exceptions, framed in varying terms, but expressing the general idea that an objection may be raised for the first time in court if the petitioner has good grounds for not raising it before the agency. *See, e.g.,* 15 U.S.C. § 78y(c)(1) ("No objection ... may be considered by the court unless it was urged before the [agency] or there was reasonable ground for failure to do so."); 29 U.S.C. § 160(e) ("No objection that has not been urged before the [agency] ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). A safety-valve of this sort makes sense when, for instance, the allegedly erroneous ground for the agency's decision was neither argued nor reasonably anticipated during the administrative proceedings. But it makes no sense to hold, as Marine Mammal asks us to do, that one may bypass an administrative appeal whenever an ALJ's decision is so wrongheaded that it amounts to a "fundamental abuse." For one thing, deciding whether the ALJ's decision amounted to a "fundamental abuse" (as distinguished, we suppose, from just plain "abuse") would thrust the court into the merits. Yet the purpose of the exercise would be to determine if the court could decide the merits despite the litigant's failure to exhaust. For another thing, this sort of exception would defeat the aim of rules requiring—in the words of § 10(c) of the APA—appeals to "superior agency authority." Administrative appeals permit agencies to correct mistakes by "inferior" officers. Judicial review may thereby be entirely avoided. If the decision of an "inferior" officer is so seriously in error that one might justifiably call it a fundamental abuse of the administrative process, this is all the more reason for insisting that the aggrieved party appeal and give the agency a chance to rectify the error. We therefore reject Marine Mammal's contention that it can petition for judicial review, without bothering to prosecute an administrative appeal, simply because it believes the ALJ made a fundamental error in ruling against it. Whether some other sort of administrative misconduct would warrant judicial intervention before agency proceedings have run their course is a question we do not address here. *See Gulf Oil Corp. v. United States Dep't of Energy,* 663 F.2d 296, 306–09 (D.C.Cir.1981).

■ Marine Mammal's next excuse for not appealing is that doing so would have been "futile." Here the idea is that nothing would have been gained by attempting to appeal the ALJ's order to the judicial officer because the agency does not permit nonparties to appeal. In denying the motion to intervene and the petition for review of the consent decree, the ALJ said that 7 C.F.R. § 1.145(a) (1997) prohibits anyone other than "a party" to a decision "to appeal or otherwise seek the review or modification" of the decision. *In re Sugarloaf Dolphin Sanctuary, Inc.,* AWA Docket No. 96–55 (Nov. 25, 1996). Marine Mammal takes this to mean that it "was prohibited from seeking review ... by the express terms of Rule 1.145." Reply Brief at 6 (emphasis omitted). Whether the judicial officer would have agreed is far from clear. Marine Mammal was not a party to the proceeding against Sugarloaf. But before the ALJ, it surely was "a party" to its own motion to intervene and its petition for review. Federal appellate courts facing analogous situations under the Federal Rules of Appellate Procedure routinely hear appeals from denials of motions to intervene as of right, even though "Federal Rules of Appellate Procedure 3 and 4 clearly contem-

plate that only parties may file a notice of appeal." *United States v. City of Oakland,* 958 F.2d 300, 301 (9th Cir.1992); *see* FED. R.APP. P. 3, 4. Non-parties may move to intervene for the purposes of appeal; "denials of such motions are, of course, appealable." *Marino v. Ortiz,* 484 U.S. 301, 304, 108 S.Ct. 586, 588, 98 L.Ed.2d 629 (1988) (per curiam); *see* 15A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3902.1, at 112–18 (2d ed.1992). There is reason to believe that the Department treats § 1.145(a) as consistent with the Federal Rules of Appellate Procedure, and specifically Rule 4. *See In re Velasam Veal Connection,* 55 Agric. Dec. 300, 303–06 (1996); *In re Toscony Provision Co.,* 43 Agric. Dec. 1106, 1108–09 (1984). We therefore do not view § 1.145(a) as a clear bar to Marine Mammal's appeal of the ALJ's refusal to allow it to intervene and contest the consent decree. We do not believe, in other words, that the provision rendered an appeal futile.

Marine Mammal offers another version of futility: if it had appealed, the judicial officer would have ruled against it. It cites two cases in which the judicial officer denied motions to intervene in disciplinary proceedings; both cases stated that the Department's rules of practice "make no provision for intervention in [such a] proceeding." *In re Syracuse Sales Co.,* P&S Docket No. D–92–52, 1993 WL 459887, at *2 (Nov. 5, 1993); *In re Bananas, Inc.,* 42 Agric. Dec. 426 (1983). While these adverse precedents increased the likelihood that Marine Mammal would lose, that cannot be enough. It must appear that pursuing available administrative remedies would have been "clearly useless," that the ultimate denial of relief was a "certainty." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Board of Trustees,* 56 F.3d 1469, 1476 (D.C.Cir.1995) (citation and internal quotation marks omitted); *Communications Workers of Am. v. AT&T Co.,* 40 F.3d 426, 433 (D.C.Cir.1994); *see also Randolph–Sheppard Vendors of Am. v. Weinberger,* 795 F.2d 90, 105–07 (D.C.Cir.1986). There is no such certainty here. In neither of the cases Marine Mammal cites was there any significant analysis of the Department's rules of practice; both decisions offered an alternative rationale for sustaining the denial of intervention, a rationale not resting on the rules of practice; neither dealt with a proceeding conducted under the Animal Welfare Act; and in neither case did the decisionmaker face a would-be intervenor claiming that a refusal to allow it into the case would amount to a constitutional violation. An agency, like a court, may alter or modify its position in response to persuasive arguments and to avoid serious constitutional questions. *See, e.g., United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Continental Air Lines, Inc. v. Department of Transp.,* 843 F.2d 1444, 1456 (D.C.Cir.1988). Given the posture of this case, it is not outside the realm of possibility that the judicial officer would have allowed Marine Mammal to intervene and challenge the consent decree. Doubt about the success of prosecuting an administrative appeal is no reason to excuse a litigant's failure to make the attempt. *See, e.g., UDC Chairs,* 56 F.3d at 1476; *Communications Workers of Am.,* 40 F.3d at 433; *see also Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 659 (7th Cir.1992).

■ This leaves only the possible exception for constitutional claims. Marine Mammal argues that the Department's enforcement of the Animal Welfare Act offends the Fifth Amendment to the Constitution because nonpossessory owners of animals covered by the Act are excluded from participating in proceedings that could affect the animals' fate. The constitutional nature of this argument, Marine Mammal thinks, excuses it from having to present the challenge to the judicial officer on appeal. There are several problems with this line of reasoning.

Marine Mammal is very much mistaken in believing that there is some bright-line rule allowing litigants to bypass administrative appeals simply because one or all of their claims are constitutional in nature. *See, e.g., Thetford Properties v. United States Dep't of Hous. & Urban Dev.,* 907 F.2d 445, 448 (4th Cir.1990). Exhaustion even of constitutional claims may promote many of the policies underlying the exhaustion doctrine. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522

(1975); *Rafeedie v. INS,* 880 F.2d 506, 513–17 (D.C.Cir.1989); *Ticor Title Ins. Co. v. FTC,* 814 F.2d 731, 733–40 (D.C.Cir.1987) (Edwards, J.) (separate opinion); *see generally* 2 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 15.5 (3d ed.1994). Here those policies—giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, compiling a record adequate for judicial review, promoting judicial efficiency, *see, e.g., McCarthy v. Madigan,* 503 U.S. 140, 145–46, 112 S.Ct. 1081, 1086–87, 117 L.Ed.2d 291 (1992); *Salfi,* 422 U.S. at 765, 95 S.Ct. at 2466–67; *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)—weigh decidedly against Marine Mammal's position.

Marine Mammal asks us to pass on the constitutionality of certain rules and regulations in the context of the Animal Welfare Act. Exactly how those rules and regulations apply to nonpossessory owners of animals in that context is a matter of some complexity and, so far as we can tell, one of first impression before the agency. All we have to go on is a summary ALJ decision, containing four sentences of analysis. We have no idea whether the Secretary, acting through the Department's judicial officer, would have agreed with the ALJ's view if given a chance to consider the matter. The judicial officer might well have decided the case differently, eliminating entirely the need for us to rule on the constitutional questions. Or the judicial officer might have affirmed the ALJ's decision. Even then, we might have had the benefit of a more thorough explanation for the result and a better understanding of the Department's position regarding the regulatory scheme Marine Mammal wants to challenge. *See, e.g., New York State Ophthalmological Soc'y v. Bowen,* 854 F.2d 1379, 1387 (D.C.Cir.1988); *Ticor Title Ins. Co.,* 814 F.2d at 743 (Edwards, J.) (separate opinion). These circumstances provide compelling reasons for holding Marine Mammal to 7 C.F.R. § 1.142(c)(4)'s exhaustion requirement, even if we were free to create an exception to it (which we do not decide). *See W.E.B. DuBois Clubs of Am. v. Clark,* 389 U.S. 309, 312, 88 S.Ct. 450, 452–53, 19 L.Ed.2d 546 (1967) (per curiam); *Public Utils. Comm'n v. United States,* 355 U.S. 534, 539–40, 78 S.Ct. 446, 450–51, 2 L.Ed.2d 470 (1958).

The petition for review is dismissed on the ground that Marine Mammal failed to appeal to the judicial officer.

*So ordered.*