HARVARD PILGRIM HEALTH CARE
OF NEW ENGLAND, Plaintiff

v.

Tommy G. THOMPSON, in his Capacity
as Secretary of the United States De-
partment of Health and Human Ser-
vices; and Dr. Mark McClellan, in his
Capacity as Administrator of the Cen-
ters for Medicare & Medicaid Ser-
vices, Defendants.

C.A. No. 02–354L.

United States District Court,
D. Rhode Island.

May 26, 2004.

Normand G. Benoit, Kimberly I. McCarthy, Robert K. Taylor, Partridge, Snow & Hahn LLP, Providence, RI, for Plaintiff.

Jonathan C. Brumer, U.S. Department of Health and Human Services, Office of the General Counsel, Baltimore, MD, Anthony C. DiGioia, U.S. Attorney's Office, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court on an appeal filed by Plaintiff, Harvard Pilgrim Health Care of New England ("Harvard Pilgrim"), to a Memorandum and Order issued by Magistrate Judge Robert W. Lovegreen. Judge Lovegreen granted the motion of Defendants, Tommy G. Thompson and Thomas A. Scully[1], ("Defen-

---

1. Thomas A. Scully was the Administrator of the Centers for Medicare and Medicaid Ser-

dants") for a Protective Order from certain discovery requested by Harvard Pilgrim. *Mem. & Order,* at 5. He concluded that no discovery was necessary as to Harvard Pilgrim's due process claim because the agency record was complete regarding Defendants' rationale for determining that Harvard Pilgrim's notice of a change in its cost apportionment method was deficient. *Id.* Judge Lovegreen also concluded that discovery was unwarranted as to Harvard Pilgrim's equal protection claim because that claim was not raised during the administrative hearings and consequently, was deemed to have been waived by Harvard Pilgrim. *Id.* Harvard Pilgrim requests that this Court modify or set aside Judge Lovegreen's Memorandum and Order arguing that it was not required to present its constitutional claims to the agency as the claims were beyond the agency's expertise and thus, Harvard Pilgrim did not waive those claims and is entitled to discovery thereof.

For the reasons that follow, this Court affirms Judge Lovegreen's conclusions that no discovery is necessary regarding Harvard Pilgrim's due process and equal protection claims and that Defendants' Motion for a Protective Order should be granted. However, this Court also concludes that Harvard Pilgrim's failure to present its equal protection claim during the administrative proceedings did not result in a waiver of that cause of action. If Harvard Pilgrim wishes to pursue the equal protection claim in this Court, it must first present that claim to the administrative agency so that the parties and the agency can develop a record for this Court to utilize in determining whether or not Defendants' decision was arbitrary and capricious and/or constituted a violation of Harvard Pilgrim's constitutional right to equal protection.

## I. Background and Procedural History

Harvard Pilgrim Health Care of New England is a health maintenance organization ("HMO") incorporated under the laws of Rhode Island. *Am. Compl. for Declaratory & Injunctive Relief,* at para. 1 (hereinafter, *Am. Compl.*). Defendant, Tommy G. Thompson, is the Secretary of the United States Department of Health and Human Services ("the Secretary"). Dr. Mark McClellan, also a named Defendant, is the Administrator of the Centers for Medicare and Medicaid Services ("CMS")[2], an agency of the United States, which is under the Secretary's authority.

### *Obtaining Federal Reimbursement for Services Provided to Medicare Recipients*

Harvard Pilgrim provided services to Rhode Island Medicare recipients throughout the 1980s and 1990s. In order to obtain federal reimbursement for those services, Harvard Pilgrim was required to submit cost reports to the Health Care Finance Administration ("HCFA"), now known as CMS. Each cost report reflected Harvard Pilgrim's apportionment of costs attributable to its Medicare patients based on a cost apportionment system accepted by the agency, CMS, in accordance with its regulations.

According to the federal laws and regulations governing Medicare, an HMO's cost reimbursement is based on a ratio between the covered Medicare Part B services provided and the total services provided. This ratio may be expressed by any of three cost apportionment methods:

vices and was a named Defendant in that capacity when Harvard Pilgrim filed its Complaint and present appeal. Dr. Mark McClellan was recently substituted for Thomas Scully pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

**2.** Until June 30, 2001, CMS was known as the Health Care Finance Administration.

1)Medicare encounters to total encounters; 2)Medicare charges to total charges; or 3)Medicare relative value units ("RVUs") to total RVUs. During the 1980s and early 1990s, Harvard Pilgrim used the first cost apportionment method: Medicare encounters to total encounters.

In the early 1990s, the auditor assigned to Harvard Pilgrim's cost reports recommended that Harvard Pilgrim change to the RVU system used by other HMOs. HCFA published and devised the RVU system and had approved of its use by several large Medicare service providers.

### Harvard Pilgrim Decides to Use the RVU Cost Apportionment Method

On or about September 30, 1991, Harvard Pilgrim sent a written notice to CMS' predecessor, HCFA, that it intended to begin using the RVU system as its cost apportionment method. Harvard Pilgrim sent a second written notification on December 31, 1991. On November 1, 1993, and after adjusting its data collection systems to utilize the new RVU method, Harvard Pilgrim sent a third notice to HCFA stating that it intended to switch to the RVU cost apportionment method beginning in 1994.

At the time that Harvard Pilgrim sent these notices, HCFA had no written policies or procedures for an HMO to follow when changing its cost apportionment method. Harvard Pilgrim avers that HCFA had an informal policy during the 1990s of responding to letters stating intentions to change cost apportionment methods by approving the change or requesting additional information. However, HCFA did not respond to any of the notices submitted by Harvard Pilgrim and did not request any additional information.

### Harvard Pilgrim Begins Using the RVU Method

Harvard Pilgrim started using the RVU cost apportionment method for cost years beginning in 1994. On February 25, 1998, in anticipation of the agency's audit of its cost reports and determination of the reimbursement due for 1994 through 1996, Harvard Pilgrim submitted an amended cost report to HCFA using the RVU cost apportionment method. In February of 1999, Harvard Pilgrim provided HCFA with its RVU studies. HCFA accepted these studies and approved Harvard Pilgrim's change to the RVU cost apportionment method for cost years beginning with 1999, but refused to accept Harvard Pilgrim's use of the RVU method for any earlier years.

### The Agency Disallows Certain Costs Reflected by the RVU Method

In January of 2000, HCFA completed its audit of cost years 1994 through 1996 and issued its Notices of Program Reimbursement ("NPR"). In each NPR, HCFA adjusted the items for which Harvard Pilgrim had used RVUs as its cost apportionment method because Harvard Pilgrim had not obtained HCFA's approval before changing to the RVU method. This adjustment resulted in $2,429,602.00 in disallowed costs.

Harvard Pilgrim then challenged the agency's decision in administrative proceedings. The key issue presented at the administrative level was whether Harvard Pilgrim had given adequate notice, under the Medicare regulations, that it was changing to the RVU method. An agency intermediary interpreted the regulations and Manual, concluded that the notice was inadequate, and ruled in CMS' favor on November 8, 2001. The agency conceded that its practice during 1994, in most cases, was to respond to inadequate notices by requesting additional information. However, the agency had not followed this practice with respect to Harvard Pilgrim's notice.

### The Agency Issues a Final Determination and Harvard Pilgrim Brings the Matter to this Court

Harvard Pilgrim appealed the intermediary's decision. On July 8, 2002, the Deputy Administrator of CMS, acting on the Secretary's behalf, affirmed the intermediary's recommendations, which constituted the Secretary's final administrative determination of the matter. On August 7, 2002, Harvard Pilgrim initiated the instant action by filing a Complaint with this Court. Harvard Pilgrim amended that Complaint about a week later.

The Amended Complaint alleges federal court jurisdiction pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976)(hereinafter, "APA"), and contains two counts. In Count I, Harvard Pilgrim seeks review under the APA and argues that the agency's determination that Harvard Pilgrim was required to obtain prior approval of its change to the RVU method was arbitrary, capricious, and contrary to law. *Am. Compl.*, at para. 14. Count II is grounded in the Due Process and Equal Protection clauses to the United States Constitution. *Id.* at paras. 15, 16. The due process claim is based on CMS' alleged: 1)retroactive application of requirements for changing cost apportionment methods that were contrary to CMS' informal policies and not described in any statute, regulation, manual, program instruction, or other written guidelines; 2)lack of applicable procedures to alert Harvard Pilgrim, in a timely manner, that its notice was deficient and that the change in methodology would not be approved; and 3)failure to provide any opportunity, within a reasonable period after Harvard Pilgrim submitted its notice, to challenge the agency's determination or provide supplemental information to address any deficiencies. *Mem. & Order*, at 2. Harvard Pilgrim's equal protection claim is based on CMS' alleged actions of following an informal policy of either approving changes in cost apportionment methods or requesting additional information with regard to other similarly situated HMOs, but not with regard to Harvard Pilgrim. *Id.*

### Harvard Pilgrim Seeks the Discovery at Issue in the Present Appeal

Defendants answered the Amended Complaint and Harvard Pilgrim then sought discovery related to its constitutional claims. This discovery includes a total of nineteen interrogatories and nine requests for the production of documents, which are directed to each defendant. *Mem. & Order*, at 2. Harvard Pilgrim avers that these requests seek information and documentation about CMS' procedures for responding to notices of cost methodology changes in 1994 and thereafter, the criteria applied in reviewing those notices, and the agency personnel involved. *Pl.'s Objection to Magis. Judge's Mem. & Order*, at 3.

Defendants then filed a Motion for a Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Harvard Pilgrim objected to Defendants' motion and the matter was referred to Magistrate Judge Lovegreen, pursuant to 28 U.S.C. § 636(b)(1)(A), for determination. Thereafter, Judge Lovegreen held a hearing and took the matter under advisement.

Judge Lovegreen issued a Memorandum and Order concluding that discovery was unnecessary as to Harvard Pilgrim's due process and equal protection claims for two reasons. First, the administrative record was complete as to Defendants' reasons for determining that Harvard Pilgrim's notice of a change in its cost apportionment method was deficient. *Mem. & Order*, at 5. Second, Harvard Pilgrim waived its equal protection claim by not raising that claim during the administra-

tive proceedings. *Id.* As a result, Judge Lovegreen granted Defendants' Motion for a Protective Order. *Id.*

### Harvard Pilgrim Appeals Judge Lovegreen's Memorandum and Order

Harvard Pilgrim then filed the present appeal from Judge Lovegreen's Memorandum and Order to which Defendants thereafter responded. Harvard Pilgrim asserts that it was not required to present its constitutional claims at the administrative level, the claims have not been waived, and Harvard Pilgrim is entitled to discovery relating to those claims. *Pl.'s Objection to Magis. Judge's Mem. & Order*, at 1. Defendants ask this Court to reject Harvard Pilgrim's arguments for the reasons articulated by Judge Lovegreen and to sustain his conclusion that Defendants' Motion for a Protective Order should be granted. *Defs.' Resp. to Pl.'s Objection to the Magis. Judge's Mem. & Order*, at 2. This matter has been fully briefed and argued and is now in order for decision.

## II. Standard of Review

The standard that guides a district court's review of a magistrate judge's determinations turns on whether those determinations involved a dispositive or non-dispositive motion. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 72; Local Rule 32(b)(2),(c)(2). A dispositive motion is one that extinguishes a party's claim or defense and is reviewed by a district court de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 72(b); Local Rule 32(c)(2). *See also Office of the Child Advocate v. Lindgren*, 296 F.Supp.2d 178, 183 (D.R.I.2004). A non-dispositive motion addresses a pretrial matter while leaving a party's claim or defense intact and is reviewed by a district court under the "clearly erroneous" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Pro. 72(a); *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980);

*Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980).

■ A district court should defer to a magistrate judge's order on a non-dispositive pre-trial matter unless the order "is clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Pro. 72(a); *Raddatz*, 447 U.S. at 673, 100 S.Ct. 2406; *Park Motor Mart*, 616 F.2d at 604. A determination is "clearly erroneous" when, although there is evidence to support it, the court, after reviewing all the evidence, is left with the definite and firm conviction that the magistrate judge made a mistake. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In conducting this review, the district court must refrain from second guessing the magistrate judge's pre-trial discovery rulings. *Mutual Fire, Marine & Inland Ins. Co. v. Jenckes Mach. Co.*, No. 85–0586, 1986 WL 9717, at *1 (D.R.I. Feb.19, 1986).

■ A district court conducting a de novo review of a dispositive motion may give less deference to the magistrate judge's conclusions. There, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Child Advocate*, 296 F.Supp.2d at 183; Fed. R.Civ.P. 72(b). *See also*, 28 U.S.C. § 636(b)(1). The district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See Raddatz*, 447 U.S. at 675, 100 S.Ct. 2406; *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir.1989); 12 Charles Allen Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3070.2, at 382 (2d ed. 1997 & Supp.2003). The discretion that Article III requires regarding dispositive matters allows the district judge to decide the issues in any way he or she deems

proper and to reject or pay no attention to the magistrate judge's findings. Wright, et al., *supra*, § 3070.2, at 378.

■ At first blush, Harvard Pilgrim's appeal appears to involve a non-dispositive pre-trial motion, that being a motion for a protective order from certain requested discovery. Judge Lovegreen's determination to grant that motion with respect to discovery relating to Harvard Pilgrim's due process claim involved a pre-trial matter that left that claim intact and was thus, a non-dispositive motion that this Court will review under the "clearly erroneous" standard. However, Judge Lovegreen's determination that Harvard Pilgrim waived its equal protection claim has the effect of extinguishing that claim. This Court's determination of whether or not Harvard Pilgrim did indeed waive its equal protection claim is dispositive and thus, must be reviewed under the "de novo" standard.

## III. Discussion

Harvard Pilgrim asks this Court to modify or set aside Judge Lovegreen's Memorandum and Order because it is entitled to discovery on the constitutional claims presented in the Amended Complaint. Harvard Pilgrim's main thrust is that it was not required to present its due process and equal protection claims at the administrative level, did not waive those claims, and thus, Defendants' Motion for a Protective

Order should have been denied. *Pl.'s Objection to Magis. Judge's Mem. & Order*, at 1. Defendants argue that Judge Lovegreen's conclusions were neither clearly erroneous nor contrary to law and that this Court should sustain his conclusions or remand the matter to the administrative agency for the completion of any necessary factual development. *Defs.' Resp. to Pl.'s Objection to the Magis. Judge's Mem. & Order*, at 9.

### The APA Sets Forth the Standard for this Court's Review of the Agency's Actions.

As both parties agree, this Court has federal question jurisdiction over the Amended Complaint pursuant to 28 U.S.C. § 1331. The parties further agree that the APA provides the standard for this Court to utilize in reviewing the actions of an administrative agency, here CMS, as well as the requisite waiver of sovereign immunity.[3]

The central purpose of the APA is to provide a broad spectrum of judicial review of agency actions. *Conservation Law Found. v. Busey*, 79 F.3d 1250, 1261 (1st Cir.1996)(quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)). The APA subjects to judicial review any agency action reviewable by statute and any final agency action for which there is no other adequate remedy in a court.[4] 5 U.S.C. § 704. While the

---

**3.** The Administrative Procedure Act provides, in relevant part:

A person suffering a legal wrong because of an agency action, or adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgement or decree may be entered against the United States: *Provided*, that any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.

5 U.S.C. § 702 (emphasis in original).

**4.** This Court, *sua sponte*, raised the question of whether there was an adequate remedy under the Medicare Act, which would divest

APA does not provide an independent source of subject matter jurisdiction, it does provide a federal right of action where subject matter jurisdiction exists under 28 U.S.C. § 1331. *Busey*, 79 F.3d at 1261. *See also, Japan Whaling Ass'n. v. Am. Cetacean Soc'y.*, 478 U.S. 221, 230, n. 4, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986).

**A Federal Court Must Limit its Review to the Existing Administrative Record.**

 A court reviewing an agency's actions under the APA is required, in part, to hold unlawful and set aside agency actions, findings, and conclusions found to be:

 a)arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; b)contrary to constitutional right, power, privilege, or immunity; c)in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; d)without observance of procedures required by law; e)unsupported by substantial evidence in a case subject to Sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or f)unwarranted by the facts to the extent such facts are subject to a trial de novo by the reviewing court.

5 U.S.C. § 706(2). In making these determinations, the district court reviews the whole record or those parts of it cited by a party. *Id.* The Supreme Court has interpreted the above provisions to require an application of the appropriate standard of review based on the record that the agency presents to the reviewing court. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)(citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Therefore, the focal point of judicial review under the APA is the administrative record already in existence and not a new record made by the reviewing court. *Lorion*, 470 U.S. at 743, 105 S.Ct. 1598(quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *accord Sierra Club v. Marsh*, 976 F.2d 763, 772 (1st Cir.1992); *Valley Citizens for a Safe Env't. v. Aldridge*, 969 F.2d 1315, 1319 (1st Cir.1992); *Bradley v. Weinberger*, 483 F.2d 410, 414 (1st Cir.1973); *Charlton Mem'l. Hosp. v. Sullivan*, 816 F.Supp. 50, 51 (D.Mass. 1993); *Gables by the Sea Inc. v. Lee*, 365 F.Supp. 826, 829–30 (S.D.Fla.1973). *See also*, Richard J. Pierce, Jr., *Administrative Law Treatise*, § 11.6, at 822 (4th ed.2002). It is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency. *Pleasant Valley Hosp. Inc. v. Shalala*, 32 F.3d 67, 70 (4th Cir.1994). *See also Sierra Club*, 976 F.2d at 772–73 (noting that in an action before the district court, no new rationalizations for the agency's decision should be included, and if included, they should be disregarded). As such, broad-ranging discov-

this Court of jurisdiction under both 28 U.S.C. § 1331 and the APA. *See Heckler v. Ringer*, 466 U.S. 602, 622, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)(noting that when a claim arises under the Medicare Act, a party may not use the APA or 28 U.S.C. § 1331 to bypass the review procedures set forth in the Medicare Act). *See also, R.I. Hosp. v. Califano*, 447 F.Supp. 703, 707–09 (D.R.I.1978). After giving the parties an opportunity to consider the issue, both agreed that the present action did not arise under the Medicare Act because the provisions for district court review set forth in that statute apply only to "individuals" and "providers" as defined by the relevant regulations. This Court notes that while an HMO is clearly not a "provider" as defined by the regulations, the issue of whether or not an HMO could qualify as an individual such that this case would arise under the Medicare Act is significantly untraveled. Since both parties agree and this writer is satisfied that under present precedent, jurisdiction is proper under Section 1331 and the APA, this Court need not address any potential applicability of the Medicare Act to this case.

ery aimed at matters not included in the administrative record is inappropriate. *Malone Mortgage Co. Am. Ltd. v. Martinez,* No. 3:02–CV–1870, 2003 WL 23272381, at *2 (N.D.Tex. Jan.6, 2003)(citing *Camp,* 411 U.S. at 143, 93 S.Ct. 1241). *See also, Exxon Corp. v. Dept. of Energy,* 91 F.R.D. 26, 33 (N.D.Tex.1981)(finding that matters not considered by the agency are outside the record evaluated by the district court, legally irrelevant, and not discoverable under Rule 26 of the Federal Rules of Civil Procedure).

This requirement that federal courts base their review solely on the administrative record serves to limit the courts to their proper role. *Bradley,* 483 F.2d at 415. Reviewing courts are to determine whether an agency's action was arbitrary or capricious in light of the information the agency confronted. *Id.* The First Circuit has characterized this task as requiring a "re-view, a second look at the same material, not a re-doing." *Id.*

Limiting a district court's review to the administrative record reflects policies of fairness, orderly procedure, and competence, which are similar to those underlying the doctrine of exhaustion of administrative remedies. *Bradley,* 483 F.2d at 415. *See also, United States v. L.A. Tucker Truck Lines Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952)(noting that considerations of fairness require the general rule that courts not topple over administrative decisions unless the administrative agency erred and did so against an objection made at the appropriate time under agency practice). These policies give agencies an opportunity to correct their own errors, afford parties and courts the benefit of the agency's expertise, allow for the compilation of an adequate record for judicial review, and promote judicial efficiency. *See generally, McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Marine Mammal Conservancy, Inc. v. Dep't. of Agric.,* 134 F.3d 409, 414 (D.C.Cir.1998) (citations omitted); *Good Samaritan Med. Ctr. v. Sec'y. of Health & Human Servs.,* 776 F.2d 594, 599 (6th Cir.1985); *St. Regis Paper Co. v. Marshall,* 591 F.2d 612, 613–14 (10th Cir.1979). The Supreme Court has explained that a court that sets aside an administrative decision on a ground other than one initially presented to the agency, usurps that agency's function and deprives the agency of an opportunity to consider the matter, make a ruling, and state the reasons for its actions. *Unemployment Comp. Comm'n. of Alaska. v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946). Exhaustion of even constitutional claims promotes many of these same policies. *Marine Mammal,* 134 F.3d at 413.

### No Exception Exists to Allow Harvard Pilgrim to Supplement the Administrative Record.

As Judge Lovegreen pointed out, courts have allowed parties to supplement the agency record where: 1)the agency knew of an important matter that was unavailable to a party; 2)the agency relied on some important but secret information that was not part of the record; 3)the court needs expert testimony to help it understand matters in the agency record or needs additional factual evidence to aid its understanding; or 4)the agency engaged in bad faith or other improper behavior that warrants supplementing the record. *Mem. & Order,* at 3(citing *Town of Norfolk v. U.S. Corps of Eng'rs.,* 968 F.2d 1438, 1458 (1st Cir.1992); *Aldridge,* 886 F.2d at 460). These exceptions are narrowly construed and the party requesting discovery bears a heavy burden of showing that it is necessary to supplement the administrative record. *United States v. Amtreco Inc.,* 806 F.Supp. 1004, 1006 (M.D.Ga.1992)(citing *Overton Park,* 401 U.S. at 415, 91 S.Ct. 814). Judge Love-

green concluded that none of the above exceptions apply in this case and Harvard Pilgrim has not argued any of these exceptions to this Court.

■ Instead, Harvard Pilgrim argues that the constitutional nature of its claims negates the requirement that it first present those claims to the administrative agency. The First Circuit rejected a similar argument in *Eastern Bridge, LLC v. Chao*, and noted that the mere invocation of constitutional authority could not resurrect a theory already rejected by the Supreme Court in binding precedent. 320 F.3d 84, 91 (1st Cir.2003). Other federal courts have found that the presence of a constitutional claim does not alter the requirements that parties first present their claims during administrative proceedings and that federal courts confine their review to the record of those proceedings. *See, Marine Mammal*, 134 F.3d at 413(noting that there is no bright line rule allowing litigants to bypass administrative processes simply because one or all of their claims are constitutional in nature); *Bailey v. U.S. Army Corps of Eng'rs.*, No. 02–639, 2003 WL 21877903, at *2 (D.Minn. Aug.7, 2003)(noting, in an APA case, that a due process challenge to an agency's decision is reviewed on the administrative record that was certified and submitted to the court). The APA's restriction of judicial review to the administrative record would be meaningless if any party seeking review based on statutory or constitutional deficiencies was entitled to broad-ranging discovery. *Martinez*, 2003 WL 23272381, at *2. *See also P.R. Pub. Hous. Admin. v. U.S. Dept. of Hous. & Urban Dev.*, 59 F.Supp.2d 310, 327 (D.P.R.1999)(noting that even when constitutional claims are present, a court reviewing an administrative record should not blindly authorize wide-ranging discovery).

Harvard Pilgrim relies on a series of cases to support its argument that the presence of a constitutional claim allows for discovery of matters not included in the administrative record. However, this reliance is misplaced because those cases either do not involve a district court's review under the APA or are factually distinguishable from the case at bar. For example, *Mathews v. Eldgridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000), address the parameters of judicial review of administrative actions in cases arising under the Medicare Act, 42 U.S.C. § 405(g). *See Mathews*, 424 U.S. at 332, 96 S.Ct. 893(addressing whether the denial of a plaintiff's request for social security benefits constituted a "final decision" for purposes of federal court jurisdiction under the Medicare Act over the plaintiff's constitutional claim); and *Shalala*, 529 U.S. at 24, 120 S.Ct. 1084(requiring, in an action arising under the Medicare Act, that a plaintiff present constitutional and statutory challenges to Medicare-related regulations to the administrative agency prior to seeking review in a federal court). However, as both parties agree, the present case arises under 28 U.S.C. § 1331 and the APA, rather than the Medicare Act, provides the requisite standard of review. As discussed above, the case law is clear that a district court's review under the APA is confined to the pre-existing administrative record and the presence of constitutional claims does not alter the requirement that a plaintiff present all claims at the administrative level before seeking review in a federal court. Since the aforementioned cases relied on by Harvard Pilgrim do not address the standards for a district court's review under the APA, they are not applicable to this case.

Harvard Pilgrim also relies on *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), and *Puerto Rico Pub-*

*lic Housing Administration v. HUD*, 59 F.Supp.2d 310 (D.P.R.1999), which are distinguishable from the instant case. Although discovery relating to certain constitutional claims was allowed in *Puerto Rico Public Housing*, that decision arose in the complete absence of an administrative record. *See* 59 F.Supp.2d at 327–28. In *Webster*, the Supreme Court confronted an argument that was not presented by Defendants in this case: that judicial review of the plaintiff's claims was entirely unavailable due to the limitations of the National Security Act and alternatively, such review should be barred altogether because it would entail extensive intrusions into the agency's affairs. 486 U.S. at 603–04, 108 S.Ct. 2047. The Court's response that the federal court could control the discovery process was dictum as that discussion was ancillary to the Court's holding that Section 102(c) of the National Security Act did not bar the federal court's jurisdiction to review the constitutional claims in accordance with the APA. *Id.* at 603, 108 S.Ct. 2047. Unlike the situation presented in *Puerto Rico Public Housing*, this case does not arise in the complete absence of an administrative record. Also, this is not a case where another federal statute bars this Court's jurisdiction to review Harvard Pilgrim's constitutional claims. In short, Harvard Pilgrim has not presented this Court with any relevant or persuasive authority to support its argument that it was not required to present its constitutional claims to the administrative agency before seeking review of those claims in this Court.

**Harvard Pilgrim did not Waive its Equal Protection Claim and Discovery of that Claim is Unnecessary at this Stage of the Proceedings.**

The essence of Harvard Pilgrim's equal protection claim is that CMS allegedly followed an informal procedure of approving changes in cost apportionment methods or requesting additional information in the cases of other similarly situated HMOs, but not in the case of Harvard Pilgrim. *Mem. & Order*, at 2; *Am. Compl.*, at para. 16. Judge Lovegreen noted that there was no information in the administrative record as to how many HMOs received notice that the information supporting their change in cost apportionment methods was inadequate and how many did not. *Mem. & Order*, at 5. Therefore, he concluded that the requested discovery was unwarranted as Harvard Pilgrim had not raised its equal protection claim before the agency and consequently, had waived that claim. *Id.* Since the determination of whether or not Harvard Pilgrim waived its equal protection claim is dispositive of that issue, this Court will conduct a de novo review of Judge Lovegreen's conclusion.

■ Harvard Pilgrim did not waive its equal protection claim by failing to raise it at the administrative level because Harvard Pilgrim was unaware that it was required to present its constitutional claims to the agency before seeking a review by this Court. A waiver occurs when there is an "intentional or voluntary relinquishment of a known legal right[.]" *Doyle v. Huntress, Inc.*, 301 F.Supp.2d 135, 149 (D.R.I.2004) (citations omitted). A party cannot waive such a right unless he or she does so knowingly, that is, with knowledge of the facts. *Id.* In this case, Harvard Pilgrim was unaware that it was required to present its equal protection claim at the administrative level. This is evidenced by Harvard Pilgrim's present arguments that its constitutional claims were not required to be presented to the administrative agency and were beyond the agency's expertise. *Pl.'s Objection to the Magis. Judges' Mem. & Order*, at 1. Since Harvard Pilgrim had no knowledge of its right to present its equal protection claim at the administrative level, it did not intentionally or voluntarily relinquish its right to raise

that claim. As such, this Court cannot conclude that Harvard Pilgrim waived its equal protection claim.

In addition, it appears to this writer that the information Harvard Pilgrim seeks relating to its equal protection claim will be of assistance to this Court in determining whether or not the agency's decision was arbitrary and capricious under the APA. In order to determine whether or not CMS followed an informal procedure of approving changes in cost apportionment methods or requesting additional information from other similarly situated HMOs, but not from Harvard Pilgrim, this Court needs a complete record on that issue to review and thus, the facts must first be developed. Since there is presently no such record regarding an alleged equal protection violation and since further development will aid this Court's review under the APA, this may be a case that should be remanded to the agency for development of the administrative record. See Lorion, 470 U.S. at 744, 105 S.Ct. 1598(noting that when a reviewing court is unable to evaluate the challenged agency action based on the record before it, the proper course of action is to remand the matter to the agency for additional investigation or explanation); accord Harrison v. PPG Indus., Inc., 446 U.S. 578, 594, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980); Sierra Club, 976 F.2d at 773; Becerra–Jimenez v. Immigration & Naturalization Serv., 829 F.2d 996, 1001–02 (10th Cir.1987)(citing Ford Motor Co. v. Nat'l. Labor Relations Bd., 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939)). See also, Defs.' Resp. to Pl.'s Objection to the Magis. Judge's Mem. & Order, at 9(suggesting, in the alternative, that this matter be remanded to the administrative agency for the completion of any necessary factual development). Therefore, although the equal protection claim has not been waived, if Harvard Pilgrim wishes to press that claim before this Court, it should pursue the claim through the administrative process and develop a record on the issue for this Court to review. Simply put, it is not the function of this Court to create such a record in the first instance.

As a result, Judge Lovegreen was correct in concluding that discovery is unwarranted as to Harvard Pilgrim's equal protection claim. In a case brought pursuant to the APA, this Court may not hear or consider arguments that were not raised before the administrative agency. As Judge Lovegreen concluded, there is little if any dispute that Harvard Pilgrim did not raise its equal protection claim before the agency, and therefore, any discovery or argument on that claim is inappropriate at this stage of the proceedings. Since this Court may only consider the record already developed before the agency, Judge Lovegreen's decision to grant Defendants' Motion for a Protective Order prohibiting discovery relating to Harvard Pilgrim's equal protection claim hereby is affirmed.

### No Discovery is Necessary Regarding Harvard Pilgrim's Due Process Claim.

This Court concludes that Judge Lovegreen's determination that discovery is unnecessary regarding Harvard Pilgrim's due process claim was neither clearly erroneous nor contrary to law. This Court will review the administrative record to determine whether or not Harvard Pilgrim's due process rights have been violated. However, as required by the authorities discussed above, this Court will conduct a "re-review" and not a "re-doing" of the administrative record already in existence on that issue. The fact that Harvard Pilgrim presents a constitutional claim does not alter the conclusion that this Court must confine its review to the administrative record already developed. Therefore, Harvard Pilgrim's request for

discovery to ensure that there is no other relevant document, regulation, memorandum, or internal policy or procedure that might "crop up at some point during this case," *Mem. & Order*, at 4; *Hr'g Tr.*, at 37, constitutes inappropriate and irrelevant broad-ranging discovery aimed at matters outside of the administrative record. After reviewing this matter, this Court is left with the definite and firm conviction that Judge Lovegreen was correct. Therefore, Judge Lovegreen's decision to grant Defendants' Motion for a Protective Order barring discovery regarding Harvard Pilgrim's due process claim hereby is affirmed.

Harvard Pilgrim also objects to Judge Lovegreen's alternative conclusion that its discovery requests are too broad as they potentially require information about hundreds of HMOs and thousands of pieces of paper. *Mem. & Order*, at 6. The Court need not address that argument because the Federal Rules require, in part, that discovery be either relevant to a claim or defense, or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. Pro. 26(b)(1). The only relevant and admissible evidence in this Court is confined within the administrative record developed by the agency. Therefore, the discovery that Harvard Pilgrim seeks, regardless of the breadth of its requests, is neither relevant nor reasonably calculated to lead to the discovery of any evidence that would be considered in this Court at this stage of the proceedings.

## IV. Conclusion

For the aforementioned reasons, this Court hereby affirms Judge Lovegreen's decision to grant Defendants' Motion for a Protective Order preventing Harvard Pilgrim from conducting discovery relating to its due process and equal protection claims. While Harvard Pilgrim's failure to raise its equal protection claim at the administrative level did not result in a waiver

of that claim, the proper course of action is for Harvard Pilgrim to channel its equal protection claim through the administrative agency for investigation and factual development. If Harvard Pilgrim desires to follow that course of action, it should make a motion to remand this matter to the administrative agency. It shall have twenty days from the date of this Order to make such a motion and Defendants will have twenty days thereafter to respond.

It is so ordered.