# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 13, 2010          Decided July 23, 2010

No. 09-1095

LEWIS L. BONIFACE,
PETITIONER

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND
TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENTS

On Petition for Review of an Order
of the Transportation Security Administration

*Meghan Ferguson*, Student Counsel, argued the cause as *amicus curiae* in support of petitioner. With her on the briefs were *Sean E. Andrussier* and *James E. Coleman, Jr.*, appointed by the court, and *Samuel E. Burness*, *Kristin Collins Cope*, and *Lisa S. Hoppenjans*, Student Counsel.

*Lewis L. Boniface*, pro se, filed briefs.

*Benjamin M. Shultz*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief was *Michael S. Raab*, Attorney.

Before: GINSBURG, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

Concurring opinion filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Lewis Boniface petitions for review of a 2009 order of the Transportation Security Administration, an agency within the Department of Homeland Security, denying his request for waiver of a rule barring him from receiving a hazardous materials endorsement (HME) for his commercial driver's license because of his 1975 conviction for possession of an unregistered explosive device. We grant the petition and remand the matter to the agency to reconsider Boniface's request in the light of such evidence as he may submit.

## I. Background

A state may not grant a driver a "license to operate a motor vehicle transporting in commerce a hazardous material" unless the DHS first notifies the state "that the individual does not pose a security risk warranting denial of the license." 49 U.S.C. § 5103a(a)(1). The TSA, acting on behalf of the DHS, assesses whether an individual poses a security risk; in practice the TSA notifies the state an individual poses no threat by granting that individual an HME.

If the TSA determines an applicant for an HME has been convicted of any of several "disqualifying criminal offenses" listed in the TSA's threat assessment regulation, 49 C.F.R. § 1572.103, then it notifies the applicant of its "Initial Determination of Threat Assessment" he is "a security threat warranting denial" of his application. 49 C.F.R.

§§ 1572.5(a)(1), 1572.15(d). The options then available to the applicant are summarized in the flow chart that follows.



Receive IDTA

Appeal to Asst. Administrator, makes Final Det. of Threat Assessment

Review in court of appeals

Request waiver from Asst. Administrator

Review by ALJ

Review by Deputy Administrator

Review in court of appeals

An applicant disqualified because of a criminal offense may within 60 days appeal that determination within the TSA and, if unsuccessful, then seek review in a court of appeals. 49 C.F.R. § 1515.5. If he does not appeal within 60 days, or if his administrative appeal is unsuccessful, then the Initial Determination of Threat Assessment becomes a Final Determination. *See* 49 C.F.R. §§ 1515.5(b)(1), (c). Alternatively, any time after receiving an Initial Determination of Threat Assessment and until 60 days after receiving a Final Determination, the applicant may request a waiver on the ground that in fact he "does not pose a security threat." 49 C.F.R. §§ 1515.7(b), (c)(iii). Should his waiver

request be denied, he may seek review of that decision as well, first before an Administrative Law Judge, then before the Deputy Administrator, and then by petitioning a court of appeals for review. 49 C.F.R. § 1515.11.

In 2008 Boniface sought a renewed HME from the TSA because his California commercial driver's license was set to expire. The TSA made an Initial Determination that Boniface's 1975 conviction for possession of an unregistered explosive device was a disqualifying criminal offense and denied his application for an HME. It sent him a letter dated May 13 explaining its determination and informing him he could appeal, request a waiver, or request a copy of the materials upon which the agency had relied in making its determination. The subsequent intercourse between Boniface and the agency is summarized below:



On May 19, 2008 Boniface mailed a request for the materials upon which the agency had relied. On June 10,

before the TSA responded to that request, he submitted an appeal to the agency, arguing his 1975 conviction was unlawful and invalid and therefore should not be considered a disqualifying criminal offense. On June 12 Boniface received the materials upon which the TSA had relied and on June 18 submitted an amended appeal in which he repeated the arguments in his first filing but also argued the threat assessment regulation retroactively penalized him for his 1975 conviction, in violation of the Ex Post Facto Clause of the Constitution of the United States.

If at that point the TSA had administratively denied Boniface's appeal, then he could have either requested a waiver or sought review in this court, making for a relatively straightforward case presenting only the legal issues discussed in Parts II.A and II.B below. Things did not proceed so simply, however.

On August 6 the TSA sent a letter informing Boniface it had received his request for a waiver — although there is no evidence in the record he had filed such a request — and was denying that request, in part because of "the absence of adequate documentation demonstrating that you are rehabilitated notwithstanding TSA's reasonable effort to obtain such information from you." The letter made no reference to Boniface's appeal but did say he could challenge "the denial of [his] waiver request by requesting review by an [ALJ]," and that if he failed to do so within 30 days then the TSA's determination would become final.

Boniface duly followed the instructions included in the TSA's letter by requesting that an ALJ review the TSA's refusal to grant the waiver he had not requested. In the ensuing proceeding Boniface continued to assert his legal challenge to the TSA's reliance upon his 1975 conviction and

added a complaint about the TSA's purporting to have denied the waiver he had not requested but which the agency had imputed to him and denied: The record, he wrote, "is a complete void of any [] request for the above-stated 'information' of 'rehabilitation.' ... If Boniface had been asked for 'information' of his 'rehabilitation,' he would have provided [a variety of evidence]."

The agency, for its part, continued to make clear its position that Boniface's objections were without merit. First, the ALJ affirmed the TSA's denial of a waiver; then the Deputy Administrator affirmed the decision of the ALJ. Only in the Deputy Administrator's January 2009 letter of denial did the agency shed any light upon what had become of Boniface's appeal. "In June 2008," she wrote,

> you filed an appeal with TSA. In July 2008, TSA informed you that your appeal would be processed as a waiver, since you did not meet the eligibility standards to hold an HME under the regulations.

There is no evidence in the record, however, that Boniface was so informed in July or at any other time prior to hearing from the Deputy Administrator.

Because the TSA's determination that his appeal was being processed as a request for a waiver was revealed to Boniface only in the course of denying his administrative appeal, Boniface then sought review in this court of both the TSA's underlying determination he poses a security threat and its denial of his imputed request for a waiver.

## II. Analysis

Boniface, through a court-appointed Amicus, makes three arguments. First, he contends the TSA's determination he poses a security threat warranting denial of his application for an HME was erroneous because he did not have a disqualifying conviction and, second, even if he did, the regulations disqualifying him on the basis of a 1975 conviction are impermissibly retroactive. Third, he contends the agency's denial of his request for a waiver was arbitrary and capricious.

## A. Disqualifying Conviction

Boniface argues his 1975 conviction for possession of an unregistered explosive device was invalid because it was obtained in violation of the Interstate Agreement on Detainers. The IAD is an interstate compact which, among other things, requires dismissal of an indictment if a State, having received temporary custody for trial of a prisoner from another State, returns the prisoner without having tried him. Art. IV § (e).

The Government argues Boniface's position "is foreclosed by TSA's regulations." We agree. The agency's regulations define a conviction as "any plea of guilty or nolo contendere, or any finding of guilt" unless "subsequently overturned on appeal, pardoned, or expunged." 49 C.F.R. § 1570.3. This definition leaves no room for an applicant collaterally to attack his conviction in pursuit of an HME, which is what Boniface is trying to do here. The TSA correctly determined Boniface was convicted of a disqualifying offense for the purposes of the threat assessment regulation.

B. Retroactivity

Tagged with a disqualifying criminal offense, Boniface argues the TSA's threat assessment regulation has an unauthorized retroactive effect because it presumes an applicant with a disqualifying conviction that predates the regulations, which were first promulgated in 2003, 68 Fed. Reg. 23852, 23852, poses a security threat. As the Government points out, however, the Supreme Court has held a regulation is not retroactive in effect "merely because it draws upon antecedent facts for its operation." *Landgraf v. USI Film Prods.*, 511 U.S. 266, 270 n.24 (1994). Rather, in evaluating whether a statute or regulation has a retroactive effect we consider "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280; *see also Bergerco Can. v. U.S. Treasury Dep't*, 129 F.3d 189, 193 (D.C. Cir. 1997) (quoting this standard). Such an effect is permissible only if the relevant statute shows the Congress clearly so intended. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result").

The Government argues the threat assessment regulation does not have any of the effects deemed retroactive in *Landgraf* because it does not bar an applicant with a disqualifying conviction from obtaining an HME but rather creates "an evidentiary presumption" that an applicant with a disqualifying conviction in his past poses a security threat in the present; the applicant may rebut that presumption through the waiver process. Again, we agree. Although the presumption does, as the Amicus notes, "put[] the burden [of rebuttal] on an already-disqualified trucker," the presumption

is nonetheless rebuttable and the disqualification hence merely provisional. The scheme therefore does not "impair rights [Boniface] possessed when he acted, increase [his] liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

Boniface also contends the regulations violate the Ex Post Facto Clause, which "forbids the application of any new punitive measure to a crime already consummated." *Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 505 (1995). Pretermitting whether the denial of an HME is punitive — itself a questionable proposition — as we have just seen, the regulation simply does not have a retroactive effect. Rather, "[t]o the extent that past behavior is taken into account, it is used ... solely for evidentiary purposes." *Kansas v. Hendricks*, 521 U.S. 346, 371 (1997). The regulation therefore does not violate the Ex Post Facto Clause.

C. Denial of Waiver

Boniface argues the TSA was arbitrary and capricious in treating his appeal as a request for a waiver and simultaneously denying that request. Indeed it was.

First, there is no evidence in the record suggesting the agency explained, or even notified Boniface of, its decision to treat his appeal of the Initial Determination as a request for a waiver at the time it made that decision. Therefore, there is no support in the record for the Deputy Administrator's later explanation of the agency's decision, *viz.*, her claim that the TSA had "informed [Boniface] that [his] appeal would be processed as a waiver, since [he] did not meet the eligibility standards to hold an HME under the regulations." Second, one of the grounds given Boniface by the TSA in the letter from the Assistant Administrator initially denying his

purported request for a waiver was "the absence of adequate documentation demonstrating that you are rehabilitated notwithstanding TSA's reasonable effort to obtain such information from you," but there is no evidence in the record the agency made any such effort. Furthermore, the Deputy Administrator's explanation makes no sense; if the agency thought Boniface's appeal lacked merit, as the Deputy Administrator's statement shows it did, then it should have denied his appeal and given him an opportunity to seek a waiver supported by such evidence as he might submit. Instead, it denied the appeal and treated it as a waiver request without telling him and thereby deprived him of his right to submit evidence in support of a waiver.

The Government, significantly, does not address the merits of Boniface's argument; instead, it argues thrice over that we should not consider his argument — first because it is made by the court-appointed Amicus, not by Boniface himself, citing *Eldred v. Reno*, 239 F.3d 372 (2001); second because Boniface failed to exhaust an available administrative remedy; and third because the availability of an administrative remedy made any error harmless.

In raising the forfeiture argument, counsel is simply mistaken. Boniface, in his pro se brief, expressly adopted the arguments of the Amicus, whom we appointed to make arguments on his behalf. In *Eldred* we declined to consider an argument pressed by an amicus but "rejected by the actual parties to th[e] case." *Id.* at 378.

The Government's exhaustion argument is that Boniface should have responded to the initial letter from the Assistant Administrator, which treated his appeal as a request for a waiver and denied it, not by appealing within the agency as the letter instructed him to do but by filing a true request for a

waiver and submitting along with that request any evidence he had to show he qualified for a waiver.[*] As the Government implicitly recognizes by pressing this same argument in claiming the agency's foul-ups did not prejudice Boniface, the recourse the Government suggests Boniface had available to him is not the "administrative appeal" contemplated by the exhaustion requirement, *Marine Mammal Conservancy, Inc. v. Dep't of Agriculture*, 134 F.3d 409, 414 (1998). On the contrary, for the court to proceed as the Government now proposes — dismissing for want of exhaustion a petition for review filed by an applicant whose appeal was converted into a waiver request and then denied before he was given notice and an opportunity to submit evidence — would not serve the purposes of the exhaustion requirement, *i.e.*, to give the agency a chance to "correct its own mistake[]" and to "compil[e] a record adequate for judicial review." *Id.* Before Boniface petitioned the court for review, he had already pursued the administrative remedies prescribed by the TSA to correct an error in the denial of a request for a waiver — review by an ALJ and then by the Deputy Administrator — and obtained a reviewable final order. *See* 49 C.F.R. § 1515.11(h) ("A person may seek judicial review of a final order of the [Deputy Administrator] as provided in 49 U.S.C. 46110").

As for prejudice, although we do not set aside an agency action, regardless of its merit, if any error the agency may have made is harmless, *see* 5 U.S.C. § 706 ("due account shall

---

[*] This possibility depends upon the questionable interpretation of the phrase "new evidence or information" in 49 C.F.R. § 1515.11(b)(1)(i) put forward, it seems, for the first time in the Government's brief in this proceeding: "In TSA's view, 'new' evidence includes evidence that was previously known to an applicant, but which an applicant was precluded from submitting because of TSA's mistakes."

be taken of the rule of prejudicial error"), the TSA's treatment of Boniface's appeal as a request for a waiver and simultaneous denial of that request on August 6, 2008 obviously prejudiced Boniface by depriving him of the opportunity to submit a timely request for a waiver supported by such evidence as he might have had to show that, notwithstanding his conviction, he "does not pose a security threat." 49 C.F.R. § 1515.7(c)(2). The Government argues Boniface could have included such evidence in a new request and thereby cured the agency's error, but the limitations period for filing a new request for a waiver had run on March 8, 2009 if not earlier, while Boniface was seeking relief from the TSA's decision in the manner the agency had instructed him to do. *See* 49 C.F.R. §§ 1515.5(b)(1), (c) (Initial Determination of Threat Assessment becomes final 60 days after it is sent to applicant or when appeal of Initial Determination is denied by TSA); §§ 1515.7(c)(iii), (e) (applicant may not file request for waiver more than 60 days after Final Determination of Threat Assessment except for good cause shown). In sum, the TSA's multiple foul-ups precluded Boniface from making and documenting a request for a waiver.

## III. Conclusion

This matter is remanded for the TSA to consider Boniface's request for a waiver and such evidence as he may submit in support thereof.

*So ordered.*

GINSBURG, *Circuit Judge*, concurring: The Court cannot say whether Boniface is entitled to a waiver of the TSA's regulation deeming him a security risk; that is for the agency to determine.  I can say, however, that he was entitled to an administrative process that was not riddled with errors.  The Keystone Kops might have done a better job than did the TSA in this case.  Instead of sending Government counsel into battle to defend the indefensible, the agency should have long ago confessed error, apologized to the appellant, and tried to do right by him.